UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**DAVID R. MACNAYR, JR.,**                                       Chapter 7
    Debtor                                                            Case No. 03-17859-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DAVID B. MADOFF, CHAPTER 7 TRUSTEE,**
    Plaintiff
v.                                                                                   Adv. P. No. 08-1181

**DAVID R. MACNAYR, JR.,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matter before the Court is the Complaint filed by David B. Madoff, the Chapter 7 Trustee (the "Trustee"), against David R. MacNayr, Jr. (the "Debtor"). The Trustee seeks a determination that proceeds from a settlement of a probate court action are assets of the Debtor's bankruptcy estate, as well as turnover of those proceeds.

The Court conducted a trial on October 14, 2009 at which two witnesses testified and 16 exhibits were introduced into evidence. The issue presented is whether settlement

1

proceeds relating to a postpetition action commenced by the Debtor in the Plymouth County Probate and Family Court Division of the Massachusetts Trial Court (the "Probate Court") against his ex-spouse, Tammy A. MacNayr, the May-View Real Estate Trust, and its trustees and beneficiaries, Tammy MacNayr's parents, David J. and Pamela N. Engwer (collectively, the "Engwers") are property of the Debtor's bankruptcy estate.

Based upon the exhibits and trial testimony, the Court now makes the following findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052. The adversary proceeding is a core matter, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

## II. FACTS

### A. Procedural Background

The Debtor, a self-employed carpenter, filed a voluntary Chapter 7 petition on September 17, 2003. At that time, he listed his address as 49 Seaview Drive, Plymouth, Massachusetts (the "property"), which was his marital home, although he now resides at 15 Spendthrift Lane, East Wareham, Massachusetts. On Schedule A-Real Property, he did not claim a legal interest in the property. On Schedule B-Personal Property, he neither claimed an equitable interest in the property nor any sums due and owing from his in-laws, the Engwers, although he listed accounts receivable owed to him by parties for whom he had performed building and remodeling work, which he valued at approximately $70,000.[1]

---

[1] The Debtor amended Schedule B on February 28, 2004 to add another account receivable from a couple for whom he had performed construction services which he valued at $120,000. The Trustee attempted to collect the accounts receivable but was

On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed debts of approximately $214,219.  He did not list his in-laws as creditors, and they did not file a proof of claim in his bankruptcy case.  He did not list either or both of them as his landlords on Schedule G-Executory Contracts and Unexpired Leases.  The Chapter 7 Trustee conducted the section 341 meeting of creditors on November 5, 2003, the Debtor received his discharge on February 11, 2004, the Trustee filed a Report of No Distribution on January 21, 2005, and the case was closed on August 29, 2005.

Approximately 32 months after the Debtor's case was closed, the Trustee filed, on April 18, 2008, a "Motion to Reopen Case to Administer Newly Discovered Asset," which motion the Court granted.    Shortly thereafter, the Trustee filed a "Motion to Approve Settlement of Probate Matter."  Pursuant to that motion, the Trustee sought an order approving a stipulation captioned "Mutual Releases and Stipulation of Dismissal with Prejudice" (the "Stipulation") which was filed in the Probate Court.  The Stipulation contained pertinent recitations with respect to an action commenced by the Debtor against Tammy MacNayr, her parents, the Engwers, individually and as trustees, and the May-View Realty Trust (collectively, the "Defendants").  Specifically, the parties recited the following: 1) Tammy MacNayr filed a divorce action against the Debtor in June of 2006; 2) the Debtor filed his complaint in equity on or about July 13, 2007; 3) the Defendants filed answers, denying all allegations set forth in the complaint; 4) the Engwers filed a counterclaim against the Debtor for past due rent; 5) the divorce action and the equity

---

unsuccessful.

3

action were consolidated on February 14, 2008 and scheduled for trial on May 7, 2008; 6) "[d]uring the course of his occupancy at 49 Seaview Drive, the Plaintiff made many improvements to the subject premises, the value of which is disputed by the parties;" 7) "[t]he parties have agreed to settle all issues in this matter by the Defendants, David J. Engwer and Pamela N. Engwer, paying the Plaintiff, David R. MacNayr, Jr., the amount of $80,000 ~~for improvements~~ [sic]; 8) "[a]s part of this comprehensive settlement agreement, the Defendants, David J. Engwer and Pamela N. Engwer, agreed that all issues as to their Counterclaim are resolved;" 9) as a result of the settlement, title to the property "is vested in the May-View Real Estate Trust" with the Engwers as trustees; 10) "the Plaintiff, David R. MacNayr, Jr., and the Defendant, Tammy A. MacNayr, have no legal or equitable rights to the subject premises;" 11) the Debtor released the Defendants; 12) the divorce action was simultaneously settled; 13) Tammy MacNayr made no claim to the settlement proceeds; and 14) the parties agreed that the settlement proceeds of $80,000 would be held in the IOLTA account of the Defendants' counsel until advised by the Chapter 7 Trustee of the appropriate disposition of the funds or by order of this Court. Additionally, the parties agreed that "the issues raised in this action, and any collateral thereto, between the parties are hereby resolved, including the issue of attorney fees, pursuant to the Release and Stipulation." The Chapter 7 Trustee was a signatory to the Stipulation.

The Debtor assented to the Trustee's Motion to Approve Settlement with the proviso that the Court refrain from "submitting, declaring, or admitting that the $80,000 is estate property." On June 23, 2008, the Court granted the Trustee's Motion to Approve

4

Settlement and directed him to commence an adversary proceeding to obtain a determination with respect to the ownership of the funds and whether they constitute property of the estate.

B. <u>The Evidence</u>

In his Probate Court case, the Debtor filed an Amended Complaint in which he set forth facts relative to his acquisition and ownership of the property. In 1993, at the time he married his ex-spouse Tammy, with whom he has one son, the Debtor resided at 50 Oak Street, Wareham. The Debtor filed a Chapter 13 petition in February of 1993 and subsequently lost his Wareham home to foreclosure in April of 1995.

In late March of 1995, the Debtor discovered the property, which at the time was a four room ranch in need of substantial renovation. The property was listed for sale at $115,000, and the MacNayrs offered the owner $100,000. Although the parties agreed to a purchase price of $108,000, and the Debtor made cash payments toward the down payment on April 3, 1995 and April 8, 1995 in the total sum of $5,300, the couple was unable to obtain financing because of the Debtor's poor credit history. The Debtor prevailed upon a friend, William R. Perry, to purchase the ocean-front property in Plymouth, Massachusetts and agreed to pay him rent. On June 19, 1995, Aldona Jurgela conveyed the property to Mr. Perry and his wife, Eileen C. Perry, for $108,000. The Perrys financed their acquisition of the property with a mortgage from the Sandwich Co-Operative Bank.

As set forth in his Probate Court complaint, the Debtor stated that Mr. Perry agreed

to act as a "straw" and that he made payments toward the mortgage totaling $36,000 "in the form of cash and carpentry labor which was performed by MacNayr on behalf of and at the direction of Perry."[2] Despite these representations, on September 11, 1996, the Perrys sent the MacNayrs a letter in which they stated the following:

> The original agreement for principal payment has not been adherred [sic] to.
> We want to relieve ourselves of the liability of the mortgage.
> This letter serves as a 90 day notice for you to obtain financing for the balance of the mortgage.
> If this does not occur, we will place the property in the hands of a Real Estate Agent.  Our goal will be to receive sufficient funds to cover closing, taxes, related costs and the balance of the mortgage.

Because the MacNayrs were unable to obtain financing in their own names, the Engwers expressed their willingness to purchase the property. Although at trial, the Debtor disclaimed any legal or equitable ownership in the property, in his Probate Court complaint, he stated that the Engwers

> proposed to the MacNayrs that . . . [they] . . . would be willing to provide financing by withdrawing the needed seventy-five thousand ($75,000.00) dollars from a Certificate of Deposit held by Mrs. Engwer, with title placed in Mrs. Engwer's name and the MacNayrs agreeing to re-pay that amount over the next ten (10) years, together with the amount of interest which would have been earned if that amount had remained in Mrs. Engwer's Certificate of Deposit.

According to the Debtor, on October 18, 1996, Pamela Engwer paid $74,814.05 to the Perrys and received title to the property, although the Quitclaim Deed recited that the consideration was $108,000.  In the Probate Court complaint, the Debtor stated the

---

[2] The Debtor also stated that he "totally remodeled both the interior and exterior of the home at 49 Seaview Drive, Plymouth, MA; thereby increasing the value of the property to in excess of two hundred thousand ($200,000) dollars as of October 1996."

6

following:

> Since the original acquisition of the property . . . it has always been the intent and understanding of the MacNayrs that said property was their marital home, and that legal title would be conveyed to the MacNayrs upon repayment of the seventy-four thousand, eight hundred fourteen and 05/100 ($74,814.05) dollar balance to Mrs. Engwer by the MacNayrs.

The MacNayrs and the Engwers did not execute or record any writing or writings with respect to the agreement described by the Debtor. The Debtor also indicated in his Probate Court complaint that Pamela Engwer conveyed the property to the May-View Real Estate Trust on October 28, 2005, approximately three months before Tammy MacNayr asked him to leave the marital home. Tammy MacNayr filed a divorce action on June 23, 2006. In his complaint, the Debtor asserted that the equity in the property, "built up by the MacNayrs since April of 1995," was part of the marital assets, although he noted that Tammy MacNayr took the position that she had no interest in the property.

At trial, the Debtor was evasive in his attempts to explain why he no longer claims a legal or equitable interest in the property despite the allegations he made in his Probate Court complaint. Indeed, he asserted that although he did an enormous amount of work on the property which resulted in a substantial increase in its value from $108,000 to over $500,000, little if any of the work was performed during the period between 2001 and 2003 before he filed his bankruptcy petition. He explained that after receiving a discharge in his 1993 bankruptcy case, he was able to expend more money on the house and that the settlement proceeds received from the Engwers were for improvements he made to the property after 2003. He stated that around 2001 "we [he and Mr. Engwer] came to a

7

settlement, not a settlement, but an agreement that we were pretty much even, the amount of work I had done on the property and to whatever I owed him in back rent or taxes that weren't paid, we were pretty much even at that point."  His testimony, however, was undermined by his answers to interrogatories, which the Trustee submitted as Plaintiff's Exhibit 8.  In response to Interrogatory No. 4, through which the Trustee requested a list of all payments made to the Engwers for the property, including the date and purpose of the payment, the Debtor stated he "gave no money to the Engwers 'for' the property," but he provided a list of rent payments that he made directly to Pamela Engwer.  His payments began in January of 1997 and continued through July of 2005.  Between 1997 and March of 2003, he represented that he missed only four rental payments.  Thus, his testimony that he and Mr. Engwer agreed to set off the value of work performed against the amount of past due rent is not credible, particularly because his testimony was not corroborated by Mr. Engwer.  While the Debtor failed to pay real estate taxes, neither he nor the Trustee submitted any evidence as to the amount of taxes the MacNayrs failed to pay.

       The Debtor performed a considerable amount of construction and remodeling work on the property.  He testified that he put in a driveway, extended the septic system, replaced the existing wiring, replaced windows, remodeled the bathroom and kitchen several times, and replaced flooring.  He added that he built a deck and remodeled the front of the house, added new roof shingles and replaced the trim up to the gables. Indeed, he testified that he constantly worked on the property in the evenings and on weekends.

The result of his effort was impressive because, as noted above, the property, which Pamela Engwer bought for a stated consideration of $108,000 increased dramatically in value. In addition to the work he performed on the property, he, together with his construction crew, constructed a home for his in-laws within a short distance of the property.

The Debtor summarized the work he performed on the property before 2001 and after 2003, although he indicated that it was very difficult to compile the information and he was unsure how much merit to ascribe to his testimony. Nevertheless, the Debtor described the work he performed and testified to what he would charge a customer for that work, as well as his costs[3] for both periods.

| Work Performed between 1995 and 2001 | Value | Costs |
| --- | --- | --- |
| substandard kitchen | $5,000 | $700-$1,200 |
| substandard kitchen | $5,000 | $700-$1,200 |
| new sub-flooring | $750 | $250-$300 |
| rugs | $1,200-$1,500 | $800 |
| new insulation and sheet rock | $2,500-$3,000 | $250 |
| landscaping | $10,000-$15,000 | $1,000-$1,500 |
| new bathroom | $7,500 | $1,500 |
| windows | $2,500 | $500 |
| decks | $30,000-$40,000 | $3,000 |
| plumbing and electrical | $10,000-$12,000 | $150-$200 |
| Total | $74,450-$92,250 | $8,850-$10,450 |

---

[3] The Court notes that the Debtor's costs appear unreasonably low. He testified that he obtained surplus and defective materials from his construction jobs.

| Work performed between 2004 and 2006 | Value | Costs |
|---|---|---|
| kitchen | $20,000 | $2,500 |
| windows | $6,000-$8,000 | $900 |
| septic system | $40,000 | $800 |
| driveway | $6,000-$7,000 | $250-300 |
| back deck, Tiki hut and fish pond | $30,000-$50,000 | $1,500-$1,600 |
| painting | $1,000-$2,000 | $120-$130 |
| trees | $10,000-$12,000 | $1,250-$1,500 |
| Total | $113,000-$139,000 | $7,320-$7,730 |

Mr. Engwer acknowledged that the Debtor made improvements to the property, that he did not object to the work performed by the Debtor, and that he sometimes helped the Debtor with work on the property. He did not, however, testify to a time frame or value for the work performed. He further testified that he and his wife were the beneficiaries of the May-View Real Estate Trust and that the MacNayrs were tenants obligated to pay $800 per month in rent, plus expenses and real estate taxes. He indicated that he never promised the Debtor that he would convey the property to him and had no idea where the Debtor got such a notion.

Based upon the testimony presented about the extent of the improvements made to the property, and excluding the value of the first substandard kitchen installed by the Debtor prepetition (i.e., $5000) as it added no value to the property due to the installation of a second kitchen, and using the low end of the Debtor's estimated range of what he

10

would charge customers, the Court finds that 38% of the total value of the construction and remodeling work performed by the Debtor on the property occurred prepetition.[4] The Court further finds that the Debtor did not establish in the Probate Court action that he had any legal or equitable interest in the property. The Trustee did not intervene in the Probate Court action. He relies upon the Debtor's Complaint in that action and the terms of the Stipulation.

## III. DISCUSSION

The Trustee in his Complaint averred that the Debtor by his own admissions in the Probate Court action held an equitable interest in the property since 1996. Thus, in the Trustee's view, the settlement proceeds are property of the estate subject to turnover. Relying upon 11 U.S.C. §§ 541(a) and 542, he seeks the entire amount of the settlement proceeds.

The Debtor, on the other hand, maintains that he and Mr. Engwer agreed to a set off of the value of the work performed against past due rent and real estate taxes before he filed his Chapter 7 petition. In his view, he is entitled to keep all the settlement proceeds.[5]

---

[4] The Court calculated the percentage as follows: ($69,450 ($74,450 - $5,000) ÷ $182,450 ($69,450 + 113,000) = .38). Thirty-eight percent of $80,000 is $30,400.

[5] In his Trial Brief, the Debtor explained:

Having no relief from his soon-to-be-ex in-laws, MacNayr made demand upon them for the recent substantial improvements he made to the premises, but that demand fell upon deaf ears. MacNayr was now faced with a problem. MacNayr had a Statute of Limitations issue, in that he could not make claims to any pre-petition improvements, those improvements made prior to 2002. And, he already set those off against

11

The Court finds that, despite the legal theory advanced by the Debtor in the Probate Court action, namely that he had an equitable interest in the property, he had none. Had the parties gone to trial in the Probate Court, the Statute of Frauds would have barred the the successful assertion of such an interest, particularly because the Debtor neither alleged in the Probate Court action nor testified in the instant case that the Engwers engaged in any fraudulent or unfair conduct. *See* Mass. Gen. Laws ch. 259, § 1 ( the statute provides, in pertinent part, that "[n]o action shall be brought . . . [u]pon a contract for the sale of lands . . . [u]nless the promise, contract or agreement . . . is in writing and signed by the party to be charged therewith."). *See also* Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 710 (1992); Bibi v. Courville, 357 Mass. 782 (1970). Accordingly, the settlement proceeds of $80,000 do not establish or represent the value of the Debtor's equitable interest in the property, but rather they establish the value of the improvements made to the property by the Debtor.

The Court concludes that the settlement proceeds, despite the deletion of the words, "for improvements" were in fact attributable to the Debtor's material and labor with

---

past due rent and real estate taxes. MacNayr could only assert the value of those improvements made to the premises post-petition. He had no improvements from 2001-2003 [sic]. Secondly, he would have to institute an action in a state court other than the Probate Court; but any recovery would be construed as marital property, and thus force a re-litigation of the Divorce, since the Probate Court has no jurisdiction over contract actions. However, the Probate court does have jurisdiction over equity matters, and MacNayr could file his Complaint in Equity based on the alleged improvements to the premises, and then join the action with the Divorce, and thus resolve the overall issues or settle them.

respect to his extensive remodeling of the property. The Engwers, who lived a short distance from the MacNayrs, were aware that the Debtor was remodeling the property. Mr. Engwer did not object to the labor and materials provided by the Debtor and, indeed, agreed to and participated in their provision. Although he and the Debtor did not have a written construction contract, the Engwers benefitted from the improvements he made to the property and would be unjustly enriched were the Debtor to receive no compensation for the extensive work he did transforming a four room ranch into a half a million dollar property. In Salamon v. Terra, 394 Mass. 857 (1985), the Supreme Judicial Court, set forth the parameters of recovery for unjust enrichment. It stated:

> A quasi contract or a contract implied in law is an obligation created by law "for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent. . .. [C]onsiderations of equity and morality play a large part . . . in constructing a quasi-contract. . . ." 1 A. Corbin, Contracts § 19 (1963). It "is not really a contract, but a legal obligation closely akin to a duty to make restitution." Bloomgarden v. Coyer, 479 F.2d 201, 210 (D.C.Cir.1973). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution, § 1 (1937). The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party. *See* U.S. Controls Corp. v. Windle, 509 F.2d 909, 912 (7th Cir.1975); 1 A. Corbin, Contracts § 19A (Kaufman Supp.1984). The Appellate Division stated the rule as follows: "The injustice of the enrichment or detriment in quasi-contract equates with the defeat of someone's reasonable expectations." *See* 1 A. Corbin, Contracts, *supra*.

Salamon v. Terra, 394 Mass. at 859. *See also* Liss v. Studeny, 450 Mass. 473, 479 ( 2008).

Based upon the Debtor's testimony, summarized in the two tables above, the terms of the Stipulation, and discounting the Debtor's testimony that he and Mr. Engwer agreed to set off the value of his prepetition labor and materials against past due rent, the Court

concludes that 38% of the value of the Debtor's remodeling services were performed prepetition. Because the Debtor's entitlement to compensation for the remodeling work arises out of a quasi contract, the Court finds that the prepetition work essentially gave rise to an account receivable that is property of the Debtor's bankruptcy estate. *See* 11 U.S.C. § 541(a) ("The commencement of a case under section 301 . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case"). Accordingly, the Court finds that the Trustee is entitled to $30,400 of the $80,000 in settlement proceeds.

## IV. CONCLUSION

In accordance with the foregoing, the Court shall enter a judgment in favor of the Trustee and against the Debtor in the amount of $30,400. The balance of the $80,000 in settlement proceeds shall be payable to the Debtor.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: November 30, 2009
cc: David B. Madoff, Esq., James R. McMahon, III

14